**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MARTIQUE DAUGHTRY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2:24-cv-00365-CB-KT |
| | ) | |
| | ) | Chief District Judge Cathy Bissoon |
| v. | ) | |
| | ) | Magistrate Judge Kezia O. L. Taylor |
| CO VINCENT CEKADA, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | ECF No. 72 |
| | ) | |
| | ) | |

**REPORT AND RECOMMENDATION**

**I.    RECOMMENDATION**

For the reasons that follow, it is respectfully recommended that Defendant Booth's Motion

for Summary Judgment, ECF No. 72, be granted.

**II.    REPORT**

**A.    PROCEDURAL BACKGROUND**

Martique Daughtry ("Plaintiff") initiated this *pro se* prisoner's rights case on March 18,

2024, by filing a motion to proceed *in forma pauperis*, which was granted by an order entered on

March 20, 2024.  ECF Nos. 1, 3.  Plaintiff's Complaint was docketed that same day, ECF No. 4.

In response to this Court's Order of July 15, 2024, ECF No. 30, Plaintiff filed an amended

complaint[1] on August 30, 2024, against Corrections Officer Tanner Cavaliere, Corrections Officer

Vincent Cekada, Lieutenant Jason Halley, Corrections Officer Levie Kirkland, Corrections Officer

Charles Rankin, Sergeant Chad Regina, and Lieutenant Anthony Tyner, (collectively "Corrections

---

[1]  This amended complaint was filed in lieu of responding to motions to dismiss filed by
Defendants.  *See* ECF Nos. 21-22, 23-24, 25.

Defendants"), and against Nurse Shannon Booth, ECF No. 33.[2]  In his Amended Complaint, Plaintiff raised claims under the First Amendment, along with claims of excessive force and deliberate indifference to serious medical need under the Eighth Amendment.  ECF No. 33.

Corrections Defendants filed a partial Motion to Dismiss the Amended Complaint under the Eleventh Amendment as to all claims against Corrections Defendants in their official capacities, and for failure to allege sufficient personal involvement as to Corrections Defendants Tyner, Halley and Cavaliere.  ECF Nos. 35, 36.  Defendant Booth moved to dismiss the Amended Complaint as to the claim of deliberate indifference to serious medical need relating to an incident on August 3, 2022.  ECF Nos. 41, 42.  Plaintiff responded to these motions, ECF Nos. 45-48, and Defendant Booth filed a reply brief, ECF No. 49.

By Report and Recommendation, ECF No. 52, and subsequent Memorandum Order, ECF No. 55, the Corrections Defendants' Partial Motion to Dismiss was granted in part and denied in part; specifically, their motion was granted with prejudice as to Plaintiff's claims for money damages against them in their official capacities and his claims against Defendant Cavaliere,[3] and denied as to Defendant Tyner and Defendant Halley, as well as to the extent the Corrections Defendants asserted qualified immunity.  Additionally, Defendant Booth's Motion to Dismiss was denied.

On June 16, 2025, Defendant Booth filed her Answer, ECF No. 56; and on June 27, 2025, the Corrections Defendants answered the Answered Complaint, ECF No. 58.  After discovery

---

[2]  Plaintiff's Amended Complaint dropped claims against Defendants Herkland, Holler and Shanang; consequently, these defendants were terminated on the docket.

[3]  Defendant Cavaliere has been terminated on the docket.

closed – and after an intervening stay[4] – Defendant Booth filed a Motion for Summary Judgment on November 26, 2025, ECF Nos. 72-74.  Plaintiff has responded to the motion.  ECF No. 90-93, 96.  Accordingly, the motion is ripe for disposition.[5]

### B.    FACTUAL BACKGROUND

Plaintiff's claims arise from his confinement at the State Correctional Institution at Fayette ("SCI-Fayette") in 2022.  Plaintiff was placed in the facility's Restricted Housing Unit ("RHU") and was housed there in March 2022.  *See* ECF No. 74 ¶ 2.  Plaintiff's medical records reflect a diagnosis for "[m]ild intermittent asthma" for which he has been prescribed inhalers.  ECF No. 73-1 at 332, 333-334, 349-350.  On the afternoon of August 3, 2022, Nurse Booth was present on C-Pod of J-Block, accompanied by Corrections Officer McCrobie, to pass out medication to RHU inmates.  ECF No. 86 ¶ 85.

Plaintiff called for Nurse Booth to come to his cell, JC2022, telling her that he was feeling "suicidal."  *Id.*  When Nurse Booth arrived at the cell, she noticed some material or clothing wrapped around Plaintiff's neck.  *Id.  See also* ECF No. 87-18 at 1-4.  While Corrections Officer McCrobie remained at Plaintiff's cell, Nurse Booth exited the pod and went to the Sergeant's office, where she notified Defendant Regina and contacted the medical department as well as Dr. Saavedra.[6]  ECF No. 87-18 at 1, 3.  After speaking with medical and Dr. Saavedra, she returned to C-Pod but remained by the slider door to the pod.  *Id.* at 3.

---

[4]  On August 26, 2025, a stay was entered pursuant to Administrative Order No. 2025-14, relating to a cyber incident affecting the Pennsylvania Office of Attorney General.  ECF No. 62.  This stay was lifted on October 3, 2025.  ECF No. 65.

[5]  The Corrections Defendants have also filed a Motion for Summary Judgment, ECF No. 84; however, that motion will be addressed by a separate Report and Recommendation in due course.

[6]  Defendant Booth's statements refer to Dr. Saavedra, who has been identified by this Court in previous cases as "a psychiatrist under contract to provide psychiatric services to inmates at SCI-Fayette."  *Spencer v. Beard*, 2010 WL 2545648, *1 (W.D. Pa. May 13, 2010), *report and recommendation adopted as modified*, 2010 WL 2545638 (W.D. Pa. June 21, 2010).  *See also*

After being alerted to the situation by Nurse Booth, Regina proceeded to Plaintiff's cell. ECF No. 86 ¶¶ 85-86.  Upon arriving at the cell, he observed Plaintiff with a sheet around his neck. *Id.* ¶ 86.  After Plaintiff refused to comply with several orders to remove the sheet from around his neck, Regina deployed a burst of OC into the cell, which had the effect of gaining Plaintiff's compliance. *Id.* ¶¶ 86-89.  Regina notified the RHU Lieutenant on shift, Lt. Halley. *Id.*  As other staff arrived, including Lt. Halley, Plaintiff was placed on a handheld camera, subjected to a visual strip search, and then taken out of his cell to the block office area where he was assessed by Nurse Booth, who decontaminated Plaintiff and cleared him for release to a Psychiatric Observation Cell ("POC") as ordered by Dr. Saavedra.  ECF No. 87-21 at 1-5. *See also* ECF No. 87-18 at 4.  Plaintiff was then escorted to the medical department where he was placed in a POC.  ECF No. 86 ¶ 90. *See also* ECF No. 87-18 at 4.

Later that same day, Plaintiff was seen by a Nurse, Pete Zentkovich, in the POC.  ECF No. 74 ¶ 4.  Plaintiff refused to speak to Nurse Zentkovich and refused all vitals. *Id.*  Thereafter, on August 22, 2022, Plaintiff reported being sprayed with OC spray and he felt it was intermittently hard to breathe. *Id.* ¶ 5; *see also* ECF No. 73-1 at 34.  Nurse Practitioner Donnelly met with Plaintiff, observing him through the RHU cell door. *Id.*  Nurse Practitioner Donnelly observed that Plaintiff was in no acute distress; that his respirations were regular and non-labored, and that he was able to speak in long sentences. *Id.*; *see also* ECF No. 73-1 at 34.  Nurse Practitioner Donnelly ordered a chest x-ray, which was reviewed and found to be within normal limits. *Id.* ¶¶ 5-6; *see also* ECF No. 73-1 at 342.

---

*Scullen v. Pennsylvania Dep't of Corr.*, 2025 WL 1687752, *1 (W.D. Pa. May 13, 2025), *report and recommendation adopted*, 2025 WL 1685844 (W.D. Pa. June 16, 2025) (same); *Bell v. Pennsylvania Dep't of Corr.*, 2025 WL 1032433, *1 (W.D. Pa. Jan. 15, 2025), *report and recommendation adopted*, 2025 WL 850644 (W.D. Pa. Mar. 19, 2025) (same).

On September 7, 2022, Plaintiff was seen at sick call which resulted in the following entry in his medical record:

> SICK CALL: INMATE C/O SHORTNESS OF BREATH X 1 MONTH. STATES THAT HE HAS BEEN HAVING DIFFICULTY BREATHING SINCE HE WAS SPRAYED WITH OC LAST MONTH. USES ALVESCO INHALER DAILY. STATES THAT HE HAS BEEN USING HIS ALBUTEROL INHALER 2X PER DAY. SYMPTOMS ARE WORSE WITH EXERTION OR WHEN IT IS HUMID. STATES THAT HIS SYMPTOMS COULD ALSO BE ANXIETY RELATED-STARTED ON MEDICATION 09/06. DENIES CHEST PAIN, COUGH, PALPITATIONS OR WHEEZING. DENIES ALL OTHER COMPLAINTS AT PRESENT

ECF No. 73-1 at 332.  A Physician's Assistant observed Plaintiff through the RHU cell door and reported "NO SIGNS OF RESPIRATIRY [sic] DISTRESS." *Id.*  He was prescribed prednisone for five days and to follow up as needed.  *Id.* at 333.  Plaintiff's medical records reflect no other medical intervention related to the August 3, 2022 incident.

## C.      LEGAL STANDARD

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Under this standard "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome under applicable substantive law.  *Anderson*, 477 U.S. at 248; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992).  An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Anderson*, 477 U.S. at 257; *Brenner v. Loc. 514, United Bhd. of Carpenters and Joiners of Am.*,

927 F.2d 1283, 1287-1288 (3d Cir. 1991).  When determining whether a genuine issue of material fact remains for trial, the court must view the record and all reasonable inferences to be drawn therefrom in favor of the nonmoving party.  *Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir. 1993); *Clement v. Consol. Rail Corp.*, 963 F.2d 599, 600 (3d Cir. 1992); *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988).  To avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings.  Instead, once the movant satisfies its burden of identifying evidence that demonstrates the absence of a genuine issue of material fact, the nonmoving party must go beyond his or her pleadings with affidavits, depositions, answers to interrogatories or other record evidence to demonstrate specific material facts that give rise to a genuine issue.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

## D.    DISCUSSION

Under the Eighth Amendment, prison officials are prohibited from exhibiting deliberate indifference to serious medical needs of inmates.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  To set forth a cognizable claim, a plaintiff must allege (1) a serious medical need and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. *Id*. at 104; *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).  Additionally, "a prisoner has no right to choose a specific form of medical treatment," so long as the treatment provided is reasonable. *Harrison v. Barkley*, 219 F.3d 132, 138-40 (2d Cir. 2000); *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004) ("mere disagreement as to the proper medical treatment" is insufficient to state a constitutional violation).

In our earlier decision on this defendant's motion to dismiss, we cited *Ali v. McAnany*, 262 F. App'x 443, 446 (3d Cir. 2008), in support of determining that Plaintiff

> unlike [the inmate] in *Ali*, *id.*, has pled facts that suggest that Booth had a "reasonable and realistic opportunity" to prevent the use of

6

> O.C. spray, rather than intervene in the spraying, yet purposefully chose to absent herself and to do nothing. Plaintiff allege[d] that Booth knew that the spraying was about to occur, knew that the use of O.C. on Plaintiff was contraindicated, [and] could have reasonably prevented the harm. Further development of the evidence on this matter would illuminate crucial matters such as, but not limited to, whether a nurse such as Booth had a duty to prevent or to notify prison officers in these circumstances.

ECF No. 52 at 13 (reported at *Daughtry v. Cekada*, 2025 WL 1678436, *6 (W.D. Pa. May 9, 2025),

*report and recommendation adopted*, 2025 WL 1678003 (W.D. Pa. June 13, 2025).

With the benefit of a summary judgment record, Defendant Booth now contends that

> there is no evidence that Nurse Booth possessed an intent to be deliberately indifferent to Mr. Daughtry's medical needs. First, there is no evidence to support that Nurse Booth's actions caused unnecessary and wanton infliction of pain to Mr. Daughtry. In fact, Nurse Booth was the first to assist Mr. Daughtry following the incident, as he set forth in his Complaint. Nurse Booth did not disregard an excessive risk to Mr. Daughtry's health or safety, as she had no control over who responded to the cell or who took over management of the situation. Nurse Booth did not intentionally refuse to provide care – she informed prison officials of the situation at hand. Nurse Booth also did not delay treatment for non-medical reasons, as, again, she was the first to provide assistance once medical treatment was required. Mr. Daughtry is unable to show that Nurse Booth was personally involved in depriving him of his rights. Specifically, the only factual allegation of Mr. Daughtry's Amended Complaint as to Nurse Booth is that she summoned Sargeant [sic] Regina when Mr. Daughtry reported feeling suicidal. Mr. Daughtry himself alleges that Nurse Booth was not present for anything that occurred after that. Mr. Daughtry relies on his own allegation that Nurse Booth was aware of his alleged asthma diagnosis, is inconsequential, as he himself avers that she was not present for, or authorized to use the O.C. spray.

ECF No. 73 at 6. The available summary judgment record bears out Defendant Booth's position.

Particularly, statements submitted by Defendant Booth indicate that, upon being advised that

Plaintiff was "feeling suicidal" and having "bad thoughts," she left Plaintiff's cell with a

corrections officer monitoring Plaintiff, went to the Sergeant's office and notified him of the

situation with Plaintiff and contacted the medical department and Dr. Saavedra.  ECF No. 87-18 at 3.  *See also* ECF No. 87-18 at 1-2; ECF No. 87-21 at 3.  Defendant Booth then remained outside the pod while Corrections Defendant Regina interacted with Plaintiff, which ultimately resulted in the deployment of OC.  *Id.*  Once Plaintiff was compliant, Defendant Booth decontaminated Plaintiff and he was "then taken over to POC per [the psychiatrist]."  *Id.* at 4.

Initially, Plaintiff has not presented any evidence to show that the use of OC was contraindicated at the time he was subjected to OC on August 3, 2023.  A review of his medical records reveals that the only entries that include such information are all from 2025.  *See* ECF No. 73-1 at 24, 85, 97.  Further, this Court has previously observed that, in response to an inmate's allegations that "exposure to OC spray caused him 'physical and psychological stress . . . caused by him being consistently sprayed with OC,'" that

> [t]hese physiological responses are common among individuals exposed to OC spray, whether they suffer from asthma or other medical conditions.  They do not alone evidence that the use of OC spray is medically contraindicated or unreasonably dangerous.  Thus, while OC spray invokes physiological responses that are decidedly unpleasant, its use is not categorically prohibited in the presence of inmates who suffer from asthma.

*Barksdale v. Dep't of Corr.*, 2024 WL 5238210, *3 (W.D. Pa. Dec. 27, 2024) (citing *Davis v. Brown*, 556 F. App'x 87, 91 (3d Cir. 2014); *Banks v. Mozingo*, 423 F. App'x 123, 126-27 (3d Cir. 2011) (noting that the use of pepper spray or mace "does not in itself amount to an Eighth Amendment violation"); *Jackson v. Beard*, 2016 WL 3621279, *8 (M.D. Pa. Mar. 31, 2016) (noting that "courts have consistently found that an isolated discrete use of pepper spray does not state an Eighth Amendment claim")), *reconsideration denied sub nom. Barksdale v. Hicks*, 2025 WL 1194530 (W.D. Pa. Apr. 24, 2025).

Finally, while it is not disputed that Plaintiff was subjected to OC spray, the record does not contain any evidence which might suggest that Defendant Booth's subsequent care was insufficient. Critically, the record does not support the conclusion that Defendant Booth was aware of a need for treatment different than what was provided and intentionally refused it. Indeed, there is no evidence to establish that Plaintiff's asthma rose to a level of a "serious medical need." *See*, *e.g.*, *Seldon v. Wetzel*, 2021 WL 2877811, *7 (W.D. Pa. May 13, 2021). Plaintiff's medical records further reveal that Plaintiff did not suffer from any permanent or ongoing effects of his exposure to OC on August 3, 2023. Indeed, during the intermittent and few occasions when issues related to this exposure were raised, they were promptly addressed and did not result in any additional medical interventions. *See* ECF No. 73-1 at 34, 332-333, 342. *Cf. Enoch v. Perry*, 2021 WL 6052004, *4 (W.D. Pa. Dec. 20, 2021) (complaints by asthmatic inmate after being subjected to OC spray constituted "mere disagreements over the treatment he received and do not support an Eighth Amendment violation"). Thus, on this record, it cannot be said that Defendant Booth exhibited deliberate indifference to any serious medical need of Plaintiff's. *See Manuel v. Capozza*, 2024 WL 3594363, *3 (3d Cir. July 31, 2024) (granting summary judgment to, among others, medical professional who provided prompt and substantial medical care for inmate's injuries after use of force incident where OC was deployed).

9

### III.   CONCLUSION

Accordingly, it is recommended that Defendant Booth's Motion for Summary Judgment, ECF No. 72, be granted.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Rules of Court, the parties are allowed fourteen (14) days from the date of service of a copy of this Report and Recommendation to file objections.  Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file timely objections will constitute a waiver of any appellate rights.


Dated:  May 29, 2026                                    **BY THE COURT**


                                                s/ Kezia O. L. Taylor
                                              KEZIA O. L. TAYLOR
                                              United States Magistrate Judge



MARTIQUE DAUGHTRY
GE7207
SCI SOMERSET
1590 Walters Mill Road
Somerset, PA 15510-0001